982 P.2d 1287

**STATE of Arizona, Respondent,**

v.

**Ronald Leslie MURRAY, Petitioner.**

**No. CR–98–0202–PR.**

Supreme Court of Arizona,
En Banc.

June 18, 1999.

Janet A. Napolitano, Arizona Attorney General, Phoenix By: Paul J. McMurdie, Diane M. Ramsey and Alan K. Polley, Cochise County Attorney, Bisbee By: Patrick M. Elliston for State of Arizona.

Ronald Leslie Murray, Florence, Pro se.

**O P I N I O N**

FELDMAN, Justice.

¶ 1  We took review of this case to determine whether the parole eligibility restrictions of A.R.S. §§ 13–604 and 13–604.02, as amended in 1997, could be retroactively applied to a prisoner sentenced before the amendments were adopted.  We have juris-

diction pursuant to Ariz. Const. art. VI, § 5(3).

## FACTS AND PROCEDURAL HISTORY

¶2 Ronald Leslie Murray (Defendant) was convicted of sexual assault, kidnapping, and several other crimes and sentenced in 1989 to aggravated terms of twenty-one years for sexual assault, concurrent terms for robbery and theft, and a consecutive twenty-one-year term for kidnapping. His convictions and sentences were affirmed on appeal. *State v. Murray,* No. 2 CA–CR–89–0564 (memorandum decision, Aug. 2, 1990). Defendant is not eligible for parole because a flat-time sentence was imposed for the sexual assault conviction.

¶3 In imposing and affirming that sentence, the trial judge and court of appeals followed § 13–604, as interpreted by *State v. Behl,* 160 Ariz. 527, 774 P.2d 831 (App.1989). Five years after *Behl* was decided, however, *State v. Tarango* reached the opposite interpretation, holding that prisoners such as Defendant could not be given flat-time sentences and are thus parole eligible. 182 Ariz. 246, 250–51, 895 P.2d 1009, 1013–14 (App. 1994). We granted review of *Tarango* to settle the conflict between these two decisions. In doing so, we disapproved *Behl* and approved *Tarango,* holding that Tarango would

> be parole eligible after serving two-thirds of her sentence, and the trial court's sentencing order is supplemented accordingly. The Department of Corrections should henceforth calculate parole eligibility dates in accordance with this opinion. *Post-conviction relief is available to correct any denial of parole eligibility which is at variance with this opinion.*

*State v. Tarango,* 185 Ariz. 208, 212, 914 P.2d 1300, 1304 (1996) (emphasis added).

¶4 In August 1996, four months after *Tarango* was filed, Defendant filed the petition for post-conviction relief at issue here, contending his sentence should be vacated because his flat-time sentence was illegal under *Tarango*'s interpretation of the statute. The trial judge granted relief on his parole

eligibility claim, finding that the Department of Corrections could recalculate Defendant's parole eligibility pursuant to *Tarango,* but denied relief on the illegal sentence claim. Defendant sought review in the court of appeals. The court of appeals acknowledged that *Tarango* applied to Defendant, and under that rule,

> if the Department of Corrections failed to reclassify [Defendant's] parole eligibility, [Defendant] would have a claim for post-conviction relief. On April 4, 1997, however, the legislature enacted an emergency measure amending both § 13–604 and § 13–604.02, overruling *Tarango,* and affirming its original intent as enunciated in *State v. Behl* ... (statute requiring flat-time sentence for sexual assault controls parole eligibility[,] rather than § 13–604, which requires that a defendant serve at least two-thirds of sentence before being eligible for parole). 1997 Ariz. Sess. Laws, ch. 34, §§ 1–3. [Defendant]'s argument is, therefore, without merit.

*State v. Murray,* Nos. 2 CA–CR–96–0459 and 2 CA–CR 97–0205–PR, at 4 (consolidated) (memorandum decision, Nov. 4, 1997).

## DISCUSSION

¶5 We do not agree that the legislature may retrospectively overrule court decisions. The legislature, of course, has the power to enact and change sentencing provisions on a prospective basis. *San Carlos Apache Tribe v. Superior Court,* 193 Ariz. 195, 204–05, 972 P.2d 179, 188–89 (1999) (substantive legislation may not retroactively alter vested rights). Thus, the legislature may conclude that *Behl* is the better rule and reinstate that rule prospectively. But the application made in the present case is retroactive rather than prospective because it would change the meaning of the statute as applied to someone like Defendant, who was sentenced before the statutory changes were enacted.

¶6 There is no doubt the legislature intended the 1997 amendments to apply retroactively. That intent is expressed quite clearly.[1] But the legislature's intent about

---

1. The legislature specifically stated its intent in     adopting the 1997 amendments was "to overrule

retroactive application "does not end our analysis." *Id.* at 205, 972 P.2d at 189; *see also Hall v. A.N.R. Freight Sys.*, 149 Ariz. 130, 139, 717 P.2d 434, 443 (1986). Parole eligibility on sentencing is, of course, a substantive right rather than a procedural matter. Within constitutional limits, the legislature is vested with plenary power to change the substantive law prospectively, but it "may not disturb vested substantive rights by retroactively changing the law that applies to completed events." *San Carlos*, 193 Ariz. at 205, 972 P.2d at 189. Nor may the legislature "change the legal consequence of events completed before [a] statute's enactment." *Id.* The substantive legal consequence of past events is determined by the law in effect at the time of the event, and the determination of that law is for the courts to decide.

■ ¶ 7 Thus, as we held in *San Carlos*, the separation of powers doctrine prohibits the legislature "from prescribing rules of decision in pending cases." *Id.* (citing *United States v. Klein*, 80 U.S. (13 Wall.) 128, 146, 20 L.Ed. 519 (1871)). *A fortiori*, the separation of powers doctrine prevents the legislature from changing the rule of decision in completed cases.

¶ 8 In *San Carlos*, we quoted with approval a passage from the United States Supreme Court's decision in *Klein*. Commenting on Congress' attempt to overturn the rule it articulated in a previous case, the Supreme Court made the following comment:

It seems to us that this is not an exercise of the acknowledged power of Congress to make exceptions and prescribe regulations to the appellate power. . . . What is this but to prescribe a rule for the decision of a cause in a particular way? . . . Can we do so without allowing one party to the controversy to decide it in its own favor? Can we do so without allowing that the legislature may prescribe rules of decision to the Judicial Department of the government in cases pending before it? We think not. . . . We must think that Congress had inadvertently passed the limit which

separates the legislative from the judicial power.

*San Carlos*, 193 Ariz. at 210, 972 P.2d at 194 (quoting from *Klein*, 80 U.S. at 146–47). We went on in *San Carlos* to state that "we believe any attempt by the Arizona Legislature to adjudicate pending cases by defining existing law and applying it to fact is prohibited by article III of the Arizona Constitution, which describes the distribution of powers of our government. . . ." *Id.*; *see also Martin v. Moore*, 61 Ariz. 92, 95, 143 P.2d 334, 335 (1943) ("By declaring the meaning of an existing law," the legislature violates separation of powers).

■ ¶ 9 These principles, so recently restated in *San Carlos*, lead to only one conclusion: the legislature cannot overrule and change *Tarango*'s interpretation of the statute and apply it on a retroactive basis. It may change the statute for prospective application, but cases, including the present one, must be decided on the basis of the court's interpretation of the substantive law that existed at the time the events in question occurred. That interpretation, binding under the separation of powers embodied in article III of our constitution, cannot be overruled. As a general matter, the separation of powers doctrine leaves creation of future statutory law to the legislative branch and determination of existing law and its application to past events to the judicial branch.

## CONCLUSION

¶ 10 We conclude that the trial judge correctly granted relief on the portion of Defendant's post-conviction petition alleging that his parole eligibility should be recalculated pursuant to *Tarango*, and thus the court of appeals erred in reversing the judge's ruling on this issue. Accordingly, we vacate the portion of the court of appeals' decision that conflicts with this opinion. We thus affirm the trial judge's sentencing order that the Department of Corrections shall calculate Defendant's parole eligibility dates in accordance with *Tarango*. Here, as in *Tarango*,

*State v. Tarango* . . . and to affirm the original intent of the legislature as enunciated in *State v.*

*Behl* . . . ." 1997 Ariz. Sess. Laws, ch. 34, § 3.

post-conviction "relief is available to correct any denial of parole eligibility which is at variance with this opinion." 185 Ariz. at 212, 914 P.2d at 1304.

THOMAS A. ZLAKET, Chief Justice, and CHARLES E. JONES, Vice Chief Justice, and RUTH V. McGREGOR, Justice, concur.

MARTONE, Justice, concurring.

¶ 11  I continue to adhere to the view that *State v. Tarango*, 185 Ariz. 208, 914 P.2d 1300 (1996) is wrongly decided. *See Tarango*, 185 Ariz. at 213, 914 P.2d at 1305 (Martone, J., dissenting).  I do not repeat that dissent here but simply note that the legislature would never have required flat time for a first-time drug or sex offender but have allowed for less than flat time for a second or third-time drug or sex offender.  Nevertheless, assuming, as we must, the validity of *Tarango*, the legislature's rejection of it can be applied only prospectively, and not retroactively.  In short, the legislature can correct for the future, but not for the past.

¶ 12  I therefore concur in the opinion and judgment of the court.