**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERT GONZALEZ, | No. 12-16607 |
| Petitioner - Appellant, | D.C. No. 4:08-cv-00658-FRZ |
| v. | |
| CHARLES L. RYAN,** Director of ADOC; et al., | MEMORANDUM* |
| Respondents - Appellees. | |

Appeal from the United States District Court
for the District of Arizona
Frank R. Zapata, Senior District Judge, Presiding

Argued and Submitted December 4, 2013
San Francisco, California

Before:  HAWKINS, GOULD, and PAEZ, Circuit Judges.

Petitioner Robert Gonzalez appeals the district court's denial of his habeas

petition under 28 U.S.C. § 2254.  In separate trials, Gonzalez was convicted of two

---

* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

** Charles L. Ryan is substituted for his predecessor, Dora B. Schriro, as
Director of the Arizona Department of Corrections, pursuant to Fed. R. App. P.
43(c)(2).

counts of attempted first degree murder for shootings on November 3, 2001 ("the first trial" or "Humo shooting"), and November 19, 2001 ("the second trial" or "Lewis shooting"), along with other crimes.   We have jurisdiction pursuant to 28 U.S.C. § 2253, and we affirm.

We review de novo the district court's decision to deny the petition. *Lambert v. Blodgett*, 393 F.3d 943, 964 (9th Cir. 2004).  Gonzalez's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214.  Gonzalez must therefore show that the last reasoned Arizona state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

**1.**      The district court correctly determined that an unconstitutional jury instruction on premeditation in each of Gonzalez's trials was harmless.[1] Constitutional trial errors provide grounds for habeas relief only if the error "had substantial and injurious effect or influence in determining the jury's verdict."

---

[1] The parties do not dispute that the jury instruction, which stated that "proof of actual reflection is not required" to establish attempted first degree murder, was unconstitutional.

2

*Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). The record for each trial contains extensive evidence that Gonzalez reflected before committing the shootings. In the first trial, the evidence showed that Gonzalez parked his car outside Humo's apartment on November 2, 2001, and initiated a conversation with Humo while holding a gun in plain sight. During the ensuing conversation, which lasted several minutes, Gonzalez considered leaving but chose instead to engage in verbal posturing with Humo that led to the shooting. Humo never physically engaged Gonzalez and attempted to retreat as Gonzalez repeatedly shot him. In the second trial, the evidence showed that Gonzalez purchased a fully automatic Mac-11 handgun after learning there was a warrant out for his arrest. When Officer Charles Blue attempted to execute the warrant, Gonzalez pulled out his weapon, began to run, and then fired multiple shots at a second officer who had pulled his truck in front of Gonzalez. Gonzalez also testified as to his decision to shoot at the second officer instead of Officer Blue given his assessment of the situation.[2]

In light of the evidence of reflection in each trial, the erroneous jury instruction did not have a "substantial and injurious effect" on the jury's verdict. *See id.* at 637-38.

---

[2] Whether Gonzalez believed these officers were police or civilians is irrelevant to the question of whether there was evidence of actual reflection.

**2.** Gonzalez's claim that the first trial court erred by admitting two nine-millimeter shell casings does not warrant relief. Even if there was evidentiary error, it did not rise to the level of constitutional error because it did not affect the "fundamental fairness" of the trial. *See Hayes v. Ayers*, 632 F.3d 500, 515 (9th Cir. 2011) (internal quotations and citations omitted). The State did not rely upon this evidence and, in fact, disavowed it in closing rebuttal. The State's case was not built upon ballistics, but upon three separate eye-witness accounts and positive identifications of Gonzalez and of the car he was using the night of the Humo shooting.

**3.** Gonzalez's claim that the trial court's preclusion of impeachment evidence deprived him of his Due Process and Confrontation Clause rights is without merit. The trial court properly excluded: (1) Humo's outstanding misdemeanor warrants because, contrary to Gonzalez's allegations, there was no evidence that he testified in exchange for a non-prosecution agreement; (2) pictures of Humo's body tattoos because Gonzalez failed to present any evidence establishing their relevance to the trial; (3) Humo's specific prior convictions for violent crimes because Humo's violent propensity was not at issue, and; (4) Humo's shoplifting conviction because it was not sufficiently probative of his credibility, *see United States v. Ortega*, 561 F.2d 803, 806 (9th Cir. 1977). Gonzalez has not established that any of the trial

4

court's rulings were contrary to or an unreasonable application of clearly established Supreme Court precedent.

**4.**     Gonzalez's claim that the trial court violated his due process rights by improperly shifting the burden of proof for self defense away from the State in his second trial fails because this was consistent with Arizona law at the time of the trial. *See* Ariz. Rev. Stat. § 13-205 (1997). "The retroactivity of a state change of law is a state question and the federal Constitution has no voice upon the subject." *La Rue v. McCarthy*, 833 F.2d 140, 142 (9th Cir. 1987) (internal quotations and citations omitted). The Arizona Supreme Court established that the 2006 legislative amendments changing self defense to an affirmative defense and shifting the burden of proof to the State are not retroactive. *Garcia v. Browning*, 151 P.3d 533, 537 (Ariz. 2007), *overturned by State v. Montes*, 245 P.3d 879 (Ariz. 2011) (approving validity of separate legislation establishing retroactivity of the 2006 amendments for crimes committed before the amendments but first submitted to a trier of fact after the amendments). The 2006 amendments do not apply to Gonzalez because the jury heard his case in 2002. Gonzalez's alternate argument that Arizona's law at the time of his trial was unconstitutional fails because states do not violate the Constitution if they place the burden of proof for self defense on the defendant. *Martin v. Ohio*, 480 U.S. 228, 235-36 (1987).

**5.** Gonzalez's claim that there was insufficient evidence to convict him in his second trial for attempted first degree murder, aggravated assault, and disorderly conduct on a police officer is without merit. "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson v. Virginia*, 443 U.S. 307, 326 (1979). After AEDPA, this court must apply the *Jackson* standard "with an additional layer of deference." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).

The following evidence supports Gonzalez's conviction for the Lewis shooting: (1) Gonzalez knew there was a warrant out for his arrest and therefore would have been expecting the police to attempt an arrest; (2) Blue testified that he yelled "Tucson Police," and "get on the ground," when he first confronted Gonzalez; (3) Gonzalez looked straight at Blue, made eye contact with him, and let out a sigh before pulling out a gun and running; (4) Blue was wearing a vest that indicated he was a law enforcement officer; (5) Lewis had not drawn a weapon, and did not have a weapon that was visible to Gonzalez, when Gonzalez began to shoot at him; (6) Gonzalez's shots narrowly missed Lewis, and; (7) Gonzalez had purchased the Mac-11 handgun after the Humo shooting and within a week of the

6

Lewis shooting. This evidence is more than sufficient under the dual *Jackson*/AEDPA standards to support Gonzalez's conviction in his second trial.

6.     Gonzalez's claim that his constitutional rights were violated because Blue destroyed exculpatory evidence by moving his vehicle before detectives could complete their investigation of the Lewis shooting fails because Gonzalez has not established that Blue acted in bad faith. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."). On appeal, Gonzalez makes no coherent argument that Blue acted in bad faith. Further, other evidence established the location of Blue's car before the shooting. *See California v. Trombetta*, 467 U.S. 479, 489 (1984).

7.     The three claims of prosecutorial misconduct that Gonzalez did not procedurally default fail because, even if there was misconduct, it did not rise to the level of a constitutional violation. *See Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012). Where a state court has ruled on the merits of a prosecutorial misconduct claim, we must apply AEDPA deference in our analysis. *Id.*

First, the state appellate court reasonably determined that the prosecution focused on Gonzalez's credibility when it made reference to the Humo shooting during closing argument at the second trial. Second, Gonzalez contends that the

7

prosecutor violated the attorney-client privilege and Gonzalez's right to counsel by impermissibly stating that Gonzalez surprised his own counsel when he concocted a story just before taking the stand.  This argument fails because the state court of appeals reasonably determined that the prosecutor's remarks were proper rebuttal in response to Gonzalez's closing argument.  Last, the prosecutor's comment that Blue moved his vehicle from the November 19 shooting scene because "he needed to do something" at the house near the Lewis shooting scene was proper because the disputed comment did not give rise to the inference that Gonzalez was approaching the house to engage in criminal activity.

8.     The three ineffective assistance of counsel claims that Gonzalez did not procedurally default fail under the double-deference standard we apply when assessing ineffective assistance of counsel claims after AEDPA.  Under *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984), Gonzalez must establish both that counsel's performance "fell below an objective standard of reasonableness" based on the "prevailing professional norms," and that such error was prejudicial.  Under AEDPA, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (internal quotations and citations omitted).

Gonzalez's first claim—that his counsel was ineffective in his first trial for failing to make an objection when the State admitted a mug shot of Gonzalez taken around the time of the shootings—is without merit because the photograph was admissible to aid an eye witness to the crime in identifying Gonzalez, whose physical appearance had changed considerably between the shooting and the trial. Gonzalez's second claim—that his counsel was ineffective in his first trial for failing to obtain a ballistics expert to counter the State's expert testimony as to the nine millimeter shell casings—is without merit because Gonzalez has not established prejudice. Gonzalez's third claim—that his counsel in his first trial failed to object to the State's closing argument—similarly fails because Gonzalez does not establish that any comment affected the outcome of the trial.

9.      Gonzalez's claims that his constitutional rights were violated during sentencing are without merit. Gonzalez does not cite to any Supreme Court authority setting forth a constitutional right to an individualized sentencing determination in non-capital cases. Further, his argument on direct appeal was exclusively focused on Arizona's sentencing laws, not federal laws. His claim is thus not cognizable on habeas review. *See* 28 U.S.C. § 2254(d); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995).

9

Gonzalez's claim that the trial court violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), in applying aggravating factors to arrive at consecutive eighteen-year sentences fails because Gonzalez's admission that he had a prior felony increased his sentencing range for each crime and placed the sentences within that range. *See Apprendi*, 530 U.S. at 490 (establishing that *"[o]ther than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" (emphasis added)). Therefore, the trial court could make findings on aggravating circumstances to increase the sentence within that range. *See id.*

10. The district court correctly ruled that Gonzalez procedurally defaulted his remaining claims because he did not fairly present them in state court. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Gonzalez failed to exhaust the following claims, in whole or in part, because he did not raise them before the state courts: six[3] (two of the three impermissible-preclusion-of-witnesses claims), seven, eight, fifteen (six of the nine prosecutorial misconduct claims), sixteen (twelve of the fifteen ineffective assistance of counsel claims), and seventeen (ineffective

---

[3] Because Gonzalez puts forward eighteen separate claims for relief, many with multiple sub-parts, we do not refer to the substance of each claim. Instead, we retain the numbering that Gonzalez used in his briefs before this court.

assistance of counsel claims related to sentencing). Gonzalez also failed to fairly present claims two, three, nine, and eleven in state court because he did not provide a grounds for relief under federal law. *See Duncan*, 513 U.S. at 365-66.

No exception applies that would allow him to proceed with his procedurally defaulted claims. Further, the district court did not err when it refused to stay the proceedings to allow Gonzalez to return to state court to exhaust his claims. Because the merits of Gonzalez's claims were no longer reviewable in the Arizona courts, *see* Ariz. R. Crim. Proc. 32.2(a)(3), 32.4, the claims were technically exhausted but procedurally defaulted. The district court thus correctly determined that there was no basis for staying Gonzalez's petition. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

11. In conclusion, we find no reversible error in the district court's denial of Gonzalez's habeas petition under 28 U.S.C. § 2254(d).

**AFFIRMED.**